# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

U.S. BANK, NATIONAL ASSOCIATION,

    Plaintiff,

vs.

NV EAGLES, LLC et al.,

    Defendants.

2:15-cv-00786-RCJ-PAL

**ORDER**

This case arises from the foreclosure of a residential property pursuant to a homeowners association lien. Pending before the Court are three offensive Motions for Summary Judgment (ECF Nos. 130, 131, 147), one defensive Motion for Summary Judgment (ECF No. 134), and a Motion to File Excess Pages (ECF No. 132).

**I.    FACTS AND PROCEDURAL BACKGROUND**

On June 27, 2006, Michael Cress purchased a home located at 517 W. Mesquite Boulevard #1524, Mesquite, Nevada 89027 ("the Property"). (Am. Compl. ¶¶ 8, 12, ECF No. 55.) The Deed of Trust ("DOT") executed identified GreenPoint Mortgage Funding, Inc. as the lender, MERS as the beneficiary, Marin Conveyance Corp. as the trustee, and a secured amount of $148,000. (*Id.* at ¶ 13.) The Property is in a planned community and is subject to certain covenants, conditions, and restrictions ("CC&Rs"). On May 31, 2012, Defendant Nevada Association Services, Inc. ("NAS")—as agent of Sandstone Condominiums Homeowners

Association ("HOA")—recorded a Notice of Default and Election to Sell against the Property, due to Cress's failure to pay HOA dues. (*Id.* at ¶ 18.)

In July 2012, Bank of America, the prior beneficiary and servicer of the loan and Plaintiff U.S. Bank's predecessor-in-interest, requested a current HOA lien payoff demand and account ledger from NAS. (*Id.* at ¶ 19.) Bank of America was then informed by NAS that NAS was not willing to provide a current payoff ledger due to a concern of violating the Fair Debt Collection Practices Act. (*Id.* at ¶ 20.) In the midst of these payoff ledger discussions, on July 30, 2012, U.S. Bank obtained all beneficial interest in the Property via recorded assignment. (*Id.* at ¶ 14.) Despite the assignment to U.S. Bank, however, Bank of America continued to seek, through its agent Miles Bauer Bergstrom & Winters LLP ("Miles Bauer"), to satisfy the superpriority portion of the HOA's lien. Based on information about the assessments charged on similar properties within the HOA, Bank of America estimated the HOA's lien plus reasonable collection costs to be about $2,036.33. (*Id.* at ¶ 21.) On August 9, 2012, Miles Bauer tendered this amount to NAS in an attempt to protect what was now U.S. Bank's interest in the Property. (*Id.* at ¶ 22.) On August 10, 2012, NAS informed Miles Bauer that its tender was rejected. (*Id.* at ¶ 23.)

On January 22, 2013, NAS recorded a Notice of Foreclosure Sale against the Property at the HOA's direction. (*Id.* at ¶ 24.) On May 21, 2013, a Foreclosure Deed was recorded with Defendant Underwood Partners, LLC ("Underwood") named as the grantee. Despite an appraised value of $79,500, Underwood paid just $9,000 for the Property at the foreclosure sale. (Appraisal Report, ECF No. 146-13; Am. Compl. ¶¶ 25–26.) Underwood also took the foreclosure deed without warranty. (Foreclosure Deed, ECF No. 130-1 at 46.) Subsequently, on October 18, 2013, Underwood Partners sold the Property to Defendant NV Eagles, LLC. (Am. Compl. ¶ 27; Sale Deed, ECF 148-8.) Underwood and NV Eagles are "parent and direct

subsidiary," both with the same business address in Newport Beach, California. (Declaration of Value, ECF No. 148-8 at 5.) Moreover, although it is Underwood that appears as the grantee on the Foreclosure Deed, NV Eagles states, in its own opposition brief: "[NV] Eagles is an innocent third-party purchaser, having paid $9,000 at the trustee's sale." (Resp. 18, ECF No. 150.)

Plaintiff alleges ten causes of action in its First Amended Complaint ("FAC"): (1) voidable transfer under N.R.S. § 112.190; (2) voidable transfer under N.R.S. § 112.180 against Underwood and NV Eagles; (3) declaratory relief; (4) quiet title; (5) wrongful foreclosure against the HOA and NAS; (6) negligence against the HOA and NAS; (7) breach of contract against the HOA and NAS; (8) unjust enrichment against Underwood, NV Eagles, the HOA, and NAS; (9) breach of the covenant of good faith and fair dealing against the HOA and NAS; (10) declaratory relief that N.R.S. § 116.3116 *et seq*. violates the Fifth Amendment to the Nevada and U.S. Constitutions.

U.S. Bank has moved for offensive summary judgment in multiple motions, (ECF Nos. 130, 131, 147), and NV Eagles has moved for defensive summary judgment on all claims in the FAC, (ECF No. 134).

## II. LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

///

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

/ / /

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the non-moving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

**III. ANALYSIS**

**A. Tender of the Superpriority Piece of the HOA's Lien**

This Court has held that the unconditional pre-foreclosure tender of the superpriority lien amount has the legal effect of extinguishing the superpriority portion of an HOA lien, whether the tender is accepted or not. *See, e.g.*, *U.S. Bank, N.A. v. SFR Investments Pool 1, LLC*, No. 3:15-cv-00241, 2016 WL 4473427, at *6–8 (D. Nev. Aug. 24, 2016) (Jones, J.). Here, there is no genuine dispute that the full superpriority piece was tendered prior to the sale. U.S. Bank has adduced evidence that on or about August 9, 2012, after the HOA's agent NAS refused to provide a payoff amount for the superpriority portion of the HOA's lien, its predecessor-in-interest's agent Miles Bauer tendered a check to NAS for $2,036.33, comprising nine months' worth of common assessments (a total of $1,440) plus estimated reasonable collection costs. (*See* Jurani Aff. ¶¶ 5–9, ECF No. 130–1 at 50; Resident Delinquency Detail, ECF No. 130–1 at 62 (indicating monthly assessments of $160.00); Payoff Letter, ECF 130-1 at 37; Check, ECF No. 13-1 at 39; NAS's Rejection of Delivery of Check, August 10, 2012, ECF No. 130–1 at 41). The

superpriority piece of an HOA loan does not include collection costs. *Horizons at Seven Hills Homeowners Ass'n v. Ikon Holdings, LLC*, 132 Nev. Adv. Op. 35, 2016 WL 1704199, at *6 (Nev. 2016). Therefore, the uncontroverted evidence indicates that Miles Bauer tendered well in excess of the HOA's superpriority lien.

In addition, the Court finds that U.S. Bank's tender was unconditional and that NAS's rejection of the tender was wrongful. First, the check tendered was an unconditional order to pay money; that is part of the very definition of a check under the law of commercial paper. *See* N.R.S. § 104.3104. The language Miles Bauer included with its cashier's check states that Miles Bauer, and presumably its client U.S. Bank's predecessor-in-interest, will understand endorsement of the check to mean they have fulfilled their obligations. (Payoff Letter, ECF 130-1 at 37–38.) This language simply delineated how the tenderer would interpret the actions of the recipient. It did not require NAS to take any action or waive any rights. And it did not depend on any uncertain event or contingency. Thus, a reasonable jury could not find the tender was conditional. In reality, the check was an unconditional order to pay money, permitting NAS (on behalf of the HOA) to immediately demand and receive money from the draftee in the amount indicated on the check without any further action or consent by Miles Bauer.

Second, NV Eagles cites an unpublished disposition of the Nevada Supreme Court to argue that a rejected tender of the superpriority piece of an association's lien does not extinguish the lien if the rejection is "grounded on an honest belief that the tender was insufficient." *Bank of Am., N.A. v. Rugged Oaks Investments, LLC*, 383 P.3d 749 (Nev. 2016) (citing 59 C.J.S. Mortgages § 582 (2016). (Resp. 8, ECF No. 150.) However, a more complete quotation of 59 C.J.S. Mortgages § 582 provides some much-needed context:

> It has been held that the mortgagee must unconditionally accept the amount due when properly tendered, and that a good and sufficient tender on the day when payment is due will relieve the property from the lien of the mortgage, *except where the refusal was not unreasonable or arbitrary, but grounded on an honest*

*belief that the tender was insufficient.* If a mortgagee wrongfully refuses to accept such a tender, additional interest may be forfeited.

(Emphasis added.) Thus, it is not enough that an association or its foreclosure agent "honestly believed" the tender was insufficient to satisfy the association's lien. It is also essential that the rejection of the tender was not unreasonable, arbitrary, or wrongful in any respect.

In this case, any reasonable juror would be compelled to find that NAS's rejection of U.S. Bank's tender was both unreasonable and arbitrary. After NAS refused to provide Miles Bauer with HOA lien payoff ledgers, Miles Bauer undertook to estimate and tender an amount sufficient to satisfy the superpriority portion of the HOA's lien. (See Jurani Aff. ¶¶ 5–9, ECF No. 130–1 at 50–51.) Regarding NAS's receipt of the check from Miles Bauer, NAS's in-house counsel Chris Yergensen gave the following deposition testimony:

> Q: Okay. Now, the fact that this letter is not in NAS's file, can you explain that to me?
>
> A: Typically this letter along with this check was delivered via runner. And this legal strategy was a global legal strategy by Miles Bauer. The letters were the same. The checks were for nine months only. Miles Bauer knew that they were not going to be accepted because they were a conditional offer of the superpriority; there was a dispute on the amount. So, typically, the runner would present the letter to NAS's receptionist. *The receptionist would confirm that it was the typical form letter with the typical check and then simply just reject it. So it never made it – this type of letter and the check usually never made it past our front desk.*
>
> . . .
>
> A: Typically, our receptionist would look online. But, typically, our receptionist got to the point where she could – she or he could just look at the second page and determine that they were making the claim that this [sic] nine months only and then just reject it. *The issue at the time was whether or not it would – they were going to include costs of collecting. And this check, the letter made it clear that the [sic] were not. So it was – it was pretty simply to reject it a [sic] that point.*

(Resp. 12, ECF No. 150 (emphasis added).)

Therefore, the evidence shows that NAS implemented a policy of summarily rejecting superpriority payoff tenders without seriously considering them. NAS delegated the duty of rejecting the tenders to its receptionist, rather than have someone with appropriate training and expertise determine whether each tender was legally sufficient. Indeed, Mr. Yergensen's testimony indicates that the tender in this case was rejected without so much as a simple comparison of the check's value to the actual amount NAS believed the HOA was owed. Most significantly, NAS rejected the check on a factually inaccurate basis, which demonstrates the completely arbitrary nature of the rejection. Mr. Yergensen testified that Miles Bauer's check was refused, at least in part, because "the issue at the time was whether [Miles Bauer] was going to include costs of collecting" in the payoff amount, and "the letter made it clear [they] were not." This is wrong. The check was in the amount of $2,036.33, comprising nine months' worth of unpaid common assessments and an additional $623.33 in estimated collection costs. And the letter clearly stated that "reasonable collection costs" were included in Miles Bauer's calculation of the superpriority payoff amount. (*See* Mot. Summ. J. 10, ECF No. 130; Jurani Aff. ¶¶ 5–9, ECF No. 130–1 at 50; Resident Delinquency Detail, ECF No. 130–1 at 62 (indicating monthly assessments of $160.00); Payoff Letter, ECF 130-1 at 37; Check, ECF No. 13-1 at 39.)

Surely, this type of indiscriminate summary rejection, without the least regard for the actual amount tendered, can only be deemed wholly arbitrary and unreasonable. Furthermore, Mr. Yergensen's testimony belies NV Eagles's contention that NAS rejected Miles Bauer's tender because it "honestly believed" the HOA was owed more. By the admission of NAS's own in-house counsel, the check "never made it past [the] front desk." How could NAS have believed it was owed more than was tendered if it didn't bother to look at the check?

Therefore, Miles Bauer's tender on behalf of U.S. Bank's predecessor-in-interest either extinguished or subrogated the superpriority piece of the HOA's lien such that the DOT, which

was in priority to the remaining subpriority piece on which the foreclosure proceeded, survived the sale. *See SFR Investments Pool 1, LLC*, 2016 WL 4473427, at *6–8. The Court finds that there is no genuine dispute that the sale in this case proceeded purely on the subpriority piece of the HOA's lien, and the foreclosure of a lien junior to the DOT cannot have extinguished it. U.S. Bank is therefore entitled to summary judgment on its claim for a declaration that the HOA's sale did not extinguish the DOT.

### B. NV Eagles's BFP Status

NV Eagles argues it is a bona fide purchaser for value without notice ("BPF"), and that the Court should therefore rule that it took title free of the DOT. A BFP is a person who pays money for real property before obtaining notice of an earlier interest in the property. 5 Tiffany Real Property § 1262 & n.39.50 (3rd ed. 2015). The traditional common law rule of competing interests in real property is "first in time, first in right." 11 Thomas, *supra*, § 92.03, at 97 (citing Ralph W. Aigler, The Operation of the Recording Acts, 22 Mich. L. Rev. 405, 406 (1924) ("first in time was first in right because there was nothing left for the second transferee")). The equity courts created exceptions to the traditional "first in time, first in right" rule. *Id.* § 92.03, at 98. Under the common law, an earlier claim had priority over a later claim if both claims were legal claims (as opposed to equitable claims). *Id.* § 92.03, at 97. The same was true if both claims were equitable. *Id.* BFP status only mattered under the common law where the purported BFP had a legal claim and a competing earlier claim to the property was purely equitable. *Id.*

Today, the difference between legal and equitable claims does not matter as much as the policies behind recognizing BFP status (or not) in particular circumstances, and BFP-type exceptions to the common law rule of priority are governed by recording statutes, in any case. *Id.* § 92.03, at 98–99. Recording statutes are categorized as "race," "notice," or "race-notice" statutes. *Id.* § 92.08, at 158. Under notice statutes, an exception to the traditional "first in time"

rule is codified for those who give value for an interest in land "without notice or knowledge" of an earlier competing interest. *Id.* § 92.08(b). Race-notice statutes additionally require the later grantee to record his interest before the earlier grantee. *Id.* § 92.08(c). Where notice matters, as under notice and race-notice statutes, one who takes title without warranty can be found to have had inquiry notice of prior unrecorded interests (and therefore not qualify as a BFP), because a grantor's refusal to issue standard warranties of title should put a reasonable and prudent person on notice of potential competing interests. *Id.* § 92.09(c)(3)(C), at 191.

Nevada has a race-notice statute. *See* Nev. Rev. Stat. § 111.325 ("Every conveyance of real property within this State hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real property, or any portion thereof, where his or her own conveyance shall be first duly recorded."). In other words, a later-obtained interest can prevail over an earlier-obtained interest in Nevada where the later purchaser has no knowledge of the previous interest and records his interest first. It is not genuinely disputed that neither of these elements is satisfied here. NV Eagles had constructive notice of the DOT at the time it acquired its interest in the Property because the DOT had been recorded, *see* Nev. Rev. Stat. § 111.315, and the foreclosure deed was of course not recorded before the DOT.

The remaining question is whether NV Eagles is a BFP as against the fact that the superpriority piece of the HOA's lien had been extinguished prior to the sale. That is, NV Eagles argues that because it had no notice of the prior tender of the superpriority piece of the HOA's lien, the legal effects of that tender should not be imposed against NV Eagles. The general BFP rule in Nevada is:

> Any purchaser who purchases an estate or interest in any real property in good faith and for valuable consideration and who does not have actual knowledge, constructive notice of, or reasonable cause to know that there exists a defect in, or adverse rights, title or interest to, the real property is a bona fide purchaser.

Nev. Rev. Stat. § 111.180(1). Even assuming the issue were whether NV Eagles had notice not only of the DOT but also of the legal possibility that the DOT might survive the HOA foreclosure sale (whether due to the pre-sale tender of the superpriority piece in particular or the legal possibility that the sale might not extinguish the DOT under NRS 116.3116 in general), NV Eagles was not an innocent purchaser. NV Eagles was on inquiry notice of the continuing vitality of the DOT, especially considering that the sale price was a small fraction of the value of the Property and it knew the winning bidder was to take a foreclosure deed without warranty. *See Berge v. Fredericks*, 591 P.2d 246, 249–50 (Nev. 1979); 11 Thomas, *supra*, § 92.09, at 163 ("Persons who knew about or could have discovered the existence of prior adverse claims through reasonable investigations should not be protected."). A buyer who takes title without warranty does not qualify as a BFP, because a grantor's refusal to issue standard warranties of title puts a reasonable and prudent person on inquiry notice of any competing interests. *See* 11 Thomas, *supra* § 92.09(c)(3)(C), at 191. And any inquiry to NAS and/or the HOA alone was insufficient as a matter of law. *See id.* (noting that "reliance upon a vendor, or similar person with reason to conceal a prior grantee's interest, does not constitute 'adequate inquiry'"). The law was not clear at the time of the sale that the sale would extinguish the DOT at all, superpriority tender or not, and a reasonable purchaser therefore would have perceived a serious risk that it would not. NV Eagles cannot be said to be a BFP as against the DOT under these circumstances.

### C. Commercial Unreasonableness

The Court will not rule at this time under *Shadow Wood* (gross inadequacy of sale price plus fraud, oppression, or unfairness) or *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917 (Nev. 1977) (commercial unreasonableness of the sale) because it has resolved the present motions on

other issues. If necessary to resolve, the Court would likely put the *Shadow Wood* and *Levers* issues to a jury.

The Court need not reach the remaining issues in U.S. Bank's motions. Therefore, the Court will deny U.S. Bank's motion to file excess pages as moot, (ECF No. 132), because the Court will not address the constitutional arguments raised within the excess pages.

The Court finds that a declaration that the DOT remains valid against the Property is sufficient to make U.S. Bank whole. Accordingly, unless U.S. Bank wishes to further pursue any remaining claim for the purpose of obtaining damages, there appears to be nothing left to determine in this case.

**CONCLUSION**

IT IS HEREBY ORDERED that U.S. Bank's motions for summary judgment (ECF No. 130, 131, 147) are GRANTED. Within fourteen (14) days, U.S. Bank shall submit either a proposed form of judgment or a notice of its intent to prosecute any remaining claim.

IT IS FURTHER ORDERED that NV Eagles's motion for summary judgment (ECF No. 134) is DENIED.

IT IS FURTHER ORDERED that the motion to file excess pages (ECF No. 132) is DENIED as moot.

IT IS SO ORDERED.
DATED: This 23rd day of May, 2017.

_____
ROBERT C. JONES
United States District Judge